IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| MARY COLLEEN BROESKI, | ) | |
| | ) | |
| Plaintiff, | ) | No. 06 C 3836 |
| | ) | |
| v. | ) | Judge Robert Gettleman |
| | ) | Magistrate Judge Schenkier |
| PROVIDENT LIFE AND ACCIDENT | ) | |
| INSURANCE COMPANY, | ) | |
| | ) | |
| Defendants. | ) | |

**PLAINTIFF'S MEMORANDUM IN SUPPORT OF
HER MOTION FOR LEAVE TO CONDUCT DISCOVERY**

Plaintiff seeks leave to conduct limited discovery related to Defendant Provident Life and Accident Insurance Company's ("Provident Life's") reliance on the opinion of the alleged "independent" medical examiner, Dr. Marshall Matz, in the denial of her claim for long-term disability benefits. For the reasons stated below, the Court should allow Plaintiff to conduct discovery and pursue evidence of bias and misconduct in the adjudication of Plaintiff's claim.

**FACTUAL BACKGROUND**

**Plaintiff's Claim for LTD Benefits**

While employed by West Suburban Hospital as a registered nurse, Plaintiff was a victim of a domestic battery which resulted in a distal clavicle fracture. (Compl.¶¶ 10-11) She had shoulder surgery in February, 2000 (left distal clavicle resection with acromioplasty and resection of coracoacromial ligament) but remained unable to work as a result of her shoulder and neck pain. Consequently, Plaintiff began receiving long-term

disability benefits in November, 2000 under a plan sponsored by her employer and administered by Provident Life. (Compl.¶¶ 9, 17)

Plaintiff had another surgery on January 8, 2001 (an arthroscopic subacromial decompression). (Compl. ¶13) When that surgery failed to relieve her pain and limitations, she underwent neck surgery in March, 2002 (an anterior cervical disectomy and fusion). (Compl.¶¶ 13-14) Despite the multiple surgeries, Plaintiff continued to suffer from severe pain in her neck, back, and shoulders along with increased weakness and numbness in both arms and legs. (Compl. ¶16) Plaintiff continued to submit medical evidence in support of her claim which included, among other evidence, Magnetic Resonance Imaging ("MRI") of the left shoulder in May, 2001 which showed subacromial and subdeltoid bursal and joint effusions; an MRI of the cervical spine in October, 2001 showing degenerative disc disease and spinal stenosis; an MRI from March, 2003 which revealed central disc protrusion, spinal stenosis, ventral cord compression, and posterior end plate spurring; and medical records reflecting her ongoing pain treatment from a pain specialist. (Compl.¶¶ 15-16)

As part of the review of the Plaintiff's continuing eligibility for long-term disability benefits, the Plaintiff was referred to Dr. Marshall Matz for an independent medical evaluation on September 24, 2003. (Compl. ¶20) Dr. Matz, who was provided with the medical records from Plaintiff's prior surgeries and her ongoing pain treatment, concluded that Plaintiff "has a myriad of subjective complaints without substantiating physical findings from a neurosurgical perspective" and that her condition would not be disabling with respect to her working as a registered nurse. (Compl.¶ 21)

2

On December 22, 2003, referring to Dr. Matz's report, UnumProvident sent a letter to the Plaintiff stating that she no longer meets the definition of disability from an orthopaedic standpoint. (Compl.¶¶ 25, 29) Plaintiff appealed the termination of her benefits and was denied in a letter dated January 27, 2004. (Compl.¶ 24) Plaintiff submitted an additional appeal on April 24, 2004 with additional medical evidence, but was denied shortly thereafter based on Defendant's conclusion that – as Dr. Matz asserted in his report – she could perform various jobs. (Compl.¶ 22)

**Plaintiff's Allegations of Bias in Her Complaint**

Plaintiff filed her complaint challenging Provident Life's denial/termination of her claim on July 14, 2006. In her complaint, she alleged that Dr. Matz has a "bias" in favor of "insurers/defendants in disability matters" and that Defendant was aware of this bias when it selected him to perform an allegedly "independent" medical review of Plaintiff's claim. (Compl. ¶¶ 30-31) Plaintiff also alleged that a governmental investigative report – "The Report of the Targeted Multistate Market Conduct Examination and Regulatory Settlement Agreement" -- raises significant concerns relating to systemic unfair claims adjudication practices by UnumProvident and its subsidiaries (which include Provident Life) identical to the ones presented in this matter and during the same time period. (Compl. ¶ 33)

### ARGUMENT

**Applicable Legal Standard**

Under Rule 26(b)(1) of the Federal Rules of Civil Procedure, "parties may obtain discovery regarding any matter, not privileged, that is relevant to the claim or defense of any party." Furthermore, it is "well-settled that district courts enjoy broad discretion in

controlling discovery." *McCarthy v. Option One Mortgage Corp.*, 362 F.3d 1008, 1012. (7th Cir. 2004).

However, under ERISA, courts have carved out an exception to these well-settled principles of federal civil procedure and curtailed the traditional right to discovery that exists under the federal rules. In *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101 (1989), the Supreme Court held that under ERISA, a Plan's denial of benefits is reviewed under an "arbitrary and capricious" standard if the Plan expressly reserves the discretionary authority to determine eligibility for benefits. After the *Firestone* decision, the Seventh Circuit – going further than what *Firestone* required -- held that when a court is faced with an arbitrary and capricious standard of review, judicial review is limited to the evidence in the administrative record unless there is doubt as to whether "the application was given a genuine evaluation." *Perlman v. Swiss Bank Corp.*, 195 F.3d 975, 982 (7th Cir. 1999). Yet, while *Perlman* clearly reflected a narrowing of a claimant's traditional right to discovery in the Seventh Circuit, the Court specifically noted that "discovery may be appropriate to investigate a claim that the plan's administrator did not do what it said it did." *Id*. at 982.

More recently, the Seventh Circuit articulated a more precise test for courts to follow in determining whether to allow discovery in ERISA cases. In *Semien v. Life Ins. Co of North America,* 436 F.3d 805, 814-15, (7th Cir. 2006), the Seventh Circuit explained that:

> The fact that a plan administrator has compensated physicians for their consulting services is not, in and of itself, sufficient to establish a conflict of interest worthy of further discovery…. **However, when a plaintiff makes specific factual allegations of misconduct or bias in a plan administrator's review procedures, limited discovery is appropriate**."

4

The Court explained that a claimant must demonstrate two factors before limited discovery becomes appropriate:

> First, a claimant must identify a specific conflict of interest or instance of misconduct. Second, a claimant must make a prima facie showing that there is good cause to believe limited discovery will reveal a procedural defect in the plan administrator's determination.

*Id.*

Plaintiff has met these two factors. Consistent with the Seventh Circuit's holdings, Plaintiff does not rely merely on the structural or inherent conflict of interests that exist in many ERISA cases where the Defendant is both the plan administrator and the payor of benefits, or on the fact that the medical examiner's services are paid for by Defendant.[1] Rather, Plaintiff has made specific allegations relating to 1) Provident Life's reliance on a medical reviewer who is not unbiased and independent; and 2) a documented history of unfair claims adjudication by Defendant during the relevant time period.

**Plaintiff has Identified a Conflict of Interest or Instance of Misconduct**

Plaintiff's allegations in her complaint alone satisfy the requirement that a claimant identify a specific conflict of interest or instance of misconduct. Plaintiff has

---

[1] The Seventh Circuit's view that the structural or inherent conflict of interest of plan administrator alone does not effect whether plaintiff should be allowed to conduct limited discovery or impact on the court's standard of review arguably conflicts with Firestone. In *Firestone*, the Supreme Court stated that where such a conflict of interest exists, it "must be weighed as a factor in determining whether there is a an abuse of discretion." 489 U.S. at 115. Courts in other jurisdictions have not disregarded this aspect of the *Firestone* holding and consider the impact of this inherent conflict of interest in determining what the proper standard of review should be and whether limited discovery is appropriate. *See e.g.*, *Kosiba v. Merck and Co.*, 384 F.3d 58, 64 (3rd Cir. 2004) (court noted that courts "must consider the nature and degree of apparent conflicts with a view to shaping their arbitrary and capricious review of the benefits determinations of discretionary decision makers."); *Calvert v. Firestar Finance, Inc.*, 409 F.3d 286, 292 (6th Cir. 2005) (court held that discovery is permissible in order to better determine the weight to accord the potential conflict of interest as part of the arbitrary and capricious standard of review.) *Lasser v. Reliance Standard Life Ins. Co.*, 130 F. Supp. 2d 616, 626 (D.N.J. 2001) (court permitted discovery relevant to the degree of any conflict of interest on the part of the plan administrator in order to determine the level of scrutiny under the arbitrary and capricious standard with which to review the benefits denial).

alleged that Defendant knowingly used and relied on Dr. Matz, a medical examiner with a bias in favor of defendants and insurers. (Compl.¶¶30, 31) There is ample evidence to suggest that Plaintiff's allegations have a solid basis in fact and that discovery on the issue could potentially result in even more specific and tangible evidence of his bias. A quick search of case-law reveals, for example, that in the early-mid 1990s, Dr. Matz acknowledged that 90% of the time when he testifies in court proceedings, he testifies in favor of the attorneys for the defense. *Lagoni v. Holiday Inn Midway* 635 N.E.2d 622, 626, 262 Ill.App.3d 1020 (1st Dist. 1994). Dr. Matz also stated that, on average, he testifies in court about once per month and almost exclusively for defense law firms. *Id*. In *Broersma v. Amoco Oil Co.*, 658 N.E.2d 1173, 1179 (1st. Dist. 1995), the court noted that Dr. Matz, who testified in support of an insurer's denial of a claim, had testified in court proceedings "21 times from 1990 through 1992 and 20 times were for defendants."[2]

Plaintiff's own experience with Dr. Matz supports her allegations that Dr. Matz did not approach a review of her claim with an unbiased mindset. Plaintiff, a registered nurse with a medical background of her own, wrote in an appeal letter from 4/24/04 the following:

> I received a letter from your office requesting I attend an IME with Dr. Marshall Matz, of St. Elizabeth's Hospital, on September 24, 2003. As you are aware, I attended that appointment and found Dr. Marshall Matz to be not very adversarial and derogatory, but, as I mentioned in earlier correspondence, he never completed a thorough neuro-examination….

---

[2] Dr. Matz was a defense expert in *Moore v. Anchor Organization for Health Maintenance*, 672 N.E.2d 826, 284 Ill.App.3d 874, (1st Dist. 1996) and *Ziekert v. Cox*, 538 N.E.2d 751, 182 Ill.App.3d 926 (1st Dist. 1989). In *Plantation Mfg. Co. v. Industrial Com'n*, 691 N.E.2d 13, 294 Ill.App.3d 705 (2nd Dist. 1997), *D.J. Masonry Co. v. Industrial Com'n*, 693 N.E.2d 1201, 295 Ill.App.3d 924, (1st Dist. 1998), *Village of Homewood v. Industrial Com'n*, 525 N.E.2d 990, 171 Ill.App.3d 852 (1st Dist. 1988) and *Grischow v. Industrial Com'n*, 593 N.E.2d 720, 228 Ill.App.3d 551 (2nd Dist. 1992) Dr. Matz testified on behalf of the employer seeking to overturn an Industrial Commission decision. Dr. Matz testified as a defense expert in *Rhodes v. Illinois Cent. Gulf R.R.*, 665 N.E.2d 1260, 172 Ill.2d 213 (Ill. 1996). Dr. Matz again testified on behalf of the employer in a workers comp case in *Nabisco Brands, Inc. v. Industrial Com'n*, 641 N.E.2d 578, 266 Ill.App.3d 1103 (1st Dist. 1994).

(AR., 625).

One telling example of why Plaintiff perceived Dr. Matz to be biased based on her interactions is worth noting here. In his report, Dr. Matz insinuates that Plaintiff was dishonest or misleading because she stated that she never had any problems with her back prior to the December, 1999 incident, and yet Dr. Matz claims that she brought along with her to the exam "x-rays of the cervical spine dated September 12, 1997, along with a CT scan of the cervical spine from August 13, 1997." (AR, 20) However, as Plaintiff explains in her appeal letter, she did not show him any x-rays or reports from 1997 and, in fact, she never had any x-rays of her neck before 1999/2000. (AR, 624) Notably, the administrative record provided by Defendant does not contain any CT-scan or x-rays of her neck or back from 1997. While it is a mystery as to why Dr. Matz would refer to medical records that Plaintiff says do not exist (and that are not in the administrative record), it is clear that Plaintiff's own experience with Dr. Matz contributed to her good faith belief that he was not the unbiased and independent medical examiner Defendant presented him to be.

**Plaintiff has made a *prima facie* showing that discovery will reveal a defect in the plan administrator's determination.**

The second factor under the *Semien* analysis is for the claimant to make a *prima facie* showing that there is good cause to believe limited discovery will reveal a procedural defect in the plan administrator's determination. 436 F.3d at 815. Here, Plaintiff has made at least a *prima facie* showing that there is good cause to believe that Defendant knowingly utilized a medical expert who is biased in favor of defendants (e.g., plan administrators, insurers, or employers.) Certainly, it would constitute a procedural

defect in the claim adjudication process if the plan administrator knowingly relied on – and attempted to portray as independent and unbiased – a medical expert who is inclined to rule in favor of insurers and who routinely discredits the credibility of claimants who complain they suffer from chronic pain. *See Nagele v. Electronic Data Systems Corp,* 193 F.R.D. 94, 104 (W.D.N.Y. 2000); *Medford v. Metropolitan Life Ins. Co.* 244 F. Supp. 2d 1120, 1128 (D. Nev. 2003).[3]

In addition, Plaintiff alleges that Defendant's use of a biased medical examiner is consistent with what UnumProvident and its subsidiaries (Provident Life being one of them) have been alleged or, in fact found, to have done in the past: engaging in systemic unfair claims adjudication practices. Specifically, on September 23, 2003, a Multistate Targeted Conduct Examination of UnumProvident was initiated to "determine if the individual and group long term disability income claim handling practices of the Companies reflected systematic 'unfair claim settlement practices….'"(See Regulatory Settlement Agreement ("RSA") attached hereto as Exhibit A, 3) This investigation resulted in a regulatory settlement agreement in which UnumProvident agreed to make changes to its claims adjudication process and to reassess a class of claimants who it had previously terminated or denied. (See generally, Exhibit A)[4] While UnumProvident

---

[3] In *Nagele v. Electronic Data Systems Corp.*, the court noted that since the arbitrary and capricious standard requires courts to "scrutinize decisions by plan fiduciaries for lack of reasonableness, including the absence of substantial evidence, such deficiencies in the administrative review function can be significantly illuminated through the reasonable exercise of standard discovery devices available in federal civil practice." 193 F.R.D. at 104 The *Nagele* court permitted discovery into the plan's use of a certain doctor as an expert in connection with processing claims and the details of any financial arrangements with the doctor and whether that doctor had found a claimant disabled in the past ten years. *Id*. at 101. Similarly, discovery relating to the neutrality of consulting physicians was also permitted in *Medford v. Metropolitan Life Ins. Co.*, where the court stated that it has discretion to determine whether any evidence outside the administrative record will be permitted. 244 F. Supp. 2d at 1120.

[4] Although Plaintiff did not timely seek reassessment of her claim, she was in fact an eligible member of the class and did receive a letter notifying her of her right under the settlement agreement to have her claim reassessed.

8

specifically denies any wrongdoing in the settlement agreement, it is noteworthy that there are several sections in the RSA which refer to independent medical examinations ("IMEs"). For example, UnumProvident agrees that it will train employees not to influence IME's and that it will select individuals to conduct IMEs "solely on the basis of objective professional criteria, and without regard to results of previous IMEs" conducted by such individuals. (Exhibit A at 16)

Furthermore, there are many examples in the case-law where UnumProvident and its subsidiaries were found to have acted in a biased or improper way in wrongly denying disability claims. As the court explained in *Radford Trust v. First Unum Life Ins. Co. of America*, 321 F.Supp2d 226, 247-249 (D. Mass, 2004):

> First Unum's conduct in denying Doe's claim was entirely inconsistent with the company's public responsibilities and with its obligations under the Policy. This is not the first time that First Unum has sought to avoid its contractual responsibilities, and an examination of cases involving First Unum and Unum Life Insurance Company of America, which like First Unum is an insuring subsidiary of Unum Provident Corporation, reveals a disturbing pattern of erroneous and arbitrary benefit denials, bad faith contract misinterpretations, and other unscrupulous tactics. These cases suggest that segments that have run in recent years on "60 Minutes" and "Dateline," alleging that Unum Provident regularly declines disability claims as a way of boosting profits," may been accurate. (*footnotes omitted*).[5]

*See also e.g., Laser v. Provident Life & Accident Insur. Co.,* 2002 U.S. Dist.LEXIS 13860 (D.Md) (court criticized defendant for failing to conduct an independent examination; and for having taken an "adversarial approach."); *Torgeson v. Unum Life Ins. Co. of America*, 466 F.Supp2d 1096, 1138-39 (N.D. Iowa 2006) (court finds that "Unum's conduct was not merely an abuse of discretion, but suggested culpable or bad faith consideration of Torgeson's claim"); *Holzschuh v. UNUM*, 2002 U.S. Dist.LEXIS

---

[5] In a footnote, the Court cites no less than 33 cases to support its conclusion concerning UnumProvident's history of wrongfully denying benefit claims. 321 F.Supp2d at 247, n.20.

13205 (E.D. Pa) (court found that Unum improperly acted as the claimant's adversary in denying benefits); *Watson v. UnumProvident Corp,*.185 F.Supp.2d 579 (D.Md. 2002); *Morgan v. Unum Life Insur. Co. of America*, 2002 U.S.Dist.LEXIS 17663 (D.Minn).

## CONCLUSION

Clearly, the Seventh Circuit has placed a hurdle in front of a Plaintiff seeking discovery in ERISA cases. However, when a Plaintiff can meet this burden, as the Plaintiff here has done, and can make a good faith showing that there is evidence of misconduct or bias, the court should grant Plaintiff leave to conduct limited discovery to pursue and evidence which furthers this showing. After all, evidence of bias or misconduct is difficult to prove without the ability to conduct discovery and, yet, a showing of bias or misconduct can result in the Court utilizing a "more cautious review" *Semien*, 436 F.3d at 814-15. This increased scrutiny on review can, in turn,effect the outcome in a given case.

PLAINTIFF MARY COLLEEN BROESKI


/s/ Edward Kraus
Attorney for Plaintiff

EDWARD KRAUS
Chicago-Kent Law Offices
565 West Adams Street, Suite 600
Chicago, Illinois 60661
PH:   (312) 906-5072
FAX: (312) 906-5299

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| MARY COLLEEN BROESKI, | ) | |
| | ) | |
| Plaintiff, | ) | No. 06 C 3836 |
| | ) | |
| v. | ) | Judge Robert Gettleman |
| | ) | Magistrate Judge Schenkier |
| PROVIDENT LIFE AND ACCIDENT | ) | |
| INSURANCE COMPANY, | ) | |
| | ) | |
| Defendants. | ) | |

## CERTIFICATE OF SERVICE BY ELECTRONIC FILING

The undersigned, an attorney, on oath, deposes and states that he caused a copy of **Motion for Leave to Conduct Discovery** and **Plaintiff's Memorandum In Support Of Her Motion For Leave To Conduct Discovery** to be served by e-mail upon the parties listed below by electronically filing same through the CM/ECF system of the U.S. District Court, Northern District, Eastern Division, at or before 11:59 p.m. on April 24, 2007.

TO:  Michael J. Smith, Esq.
     Michael J. Smith & Associates
     39 S. LaSalle St., Suite 1005
     Chicago, Illinois 60603
     michael.smith@mjs-law.com


                                             /s/ Edward Kraus


EDWARD KRAUS
Chicago-Kent Law Offices
565 West Adams Street, Suite 600
Chicago, IL 60661
(312) 906-5072
Atty. No. 6225374

11