# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| MARY COLLEEN BROESKI, ) | |
| ) | |
| Plaintiff, ) | |
| ) | No. 06 C 3836 |
| vs. ) | |
| ) | Judge Robert Gettleman |
| PROVIDENT LIFE AND ACCIDENT ) | |
| INSURANCE COMPANY, ) | Magistrate Judge Schenkier |
| ) | |
| Defendants. ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff has filed this ERISA action, pursuant to 29 U.S.C. § 1132(a)(1)(B), seeking an award of disability benefits pursuant to a group policy for long term disability ("LTD") benefits issued by defendant Provident Life and Accident Insurance Company ("Provident Life").[1] Plaintiff alleges that as a result of injuries she suffered during a battery, plaintiff was unable to continue her employment as a registered nurse and thus began receiving LTD benefits beginning on November 28, 2000. Under the terms of the group policy, after a two year period, plaintiff was eligible for continued LTD benefits only if she were unable to work not only in her occupation as a registered nurse, but more broadly in any occupation for which she was or may become suited by education, training or experience. By letters dated December 22, 2003 and January 27, 2004, Provident Life concluded that plaintiff did not meet that standard, and thus terminated plaintiff's LTD benefits. Provident Life reaffirmed that decision in a letter dated July 14, 2004.

---

[1] The complaint also named as a defendant UnumProvident Corporation ("Unum"), which plaintiff alleges is the parent corporation of Provident Life (Compl., ¶¶ 6-7). By an order dated October 3, 2006, the presiding district judge dismissed the complaint as to Unum (doc. # 15).

In this lawsuit, plaintiff challenges the decision by Provident Life to discontinue her LTD benefits. Plaintiff seeks a judgment requiring payment of benefits since the date of discontinuation (with prejudgment interest); a judgment requiring continued LTD benefits to be paid into the future so long as plaintiff meets the requirements for eligibility; and attorneys' fees and costs. There appears to be no dispute that the group policy grants Provident Life discretionary authority to make benefit decisions (Def.'s Resp., Ex. A, at 27), with the result that Provident Life's decision to discontinue plaintiff's LTD benefits must be reviewed under an arbitrary and capricious standard – "the least demanding form of judicial review of administrative action." *Semien v. Life Ins. Co. of North America*, 436 F.3d 805, 812 (7th Cir. 2006) (quoting *Trombetta v. Cragin Fed. Bank for Savings Employee Stock Ownership Plan*, 102 F.3d 1435, 1438 (7th Cir. 1996)). Under that standard, "when there can be no doubt that the application was given a genuine evaluation, judicial review is limited to the evidence that was submitted in support of the application for benefits, and the mental processes of the Plan's administrator are not legitimate grounds of inquiry any more than they would be if the decisionmaker were an administrative agency." *Perlman v. Swiss Bank Corp. Comprehensive Disability Protection Plan*, 195 F.3d 975, 982 (7th Cir. 2000). Thus, in suits seeking judicial review of benefit decisions under an arbitrary and capricious standard, discovery will rarely be permitted. *See Semien*, 436 F.3d at 814.

But, rarely does not mean never. And, in the motion now before the Court, plaintiff argues that this is a case in which limited discovery is appropriate because she has alleged that the decision denying benefits was affected by bias or misconduct. Based on this theory, plaintiff seeks leave to conduct discovery (doc. # 30). Specifically, plaintiff seeks leave to serve eight interrogatories and eleven document requests on Provident Life. Provident Life resists the motion, arguing that

plaintiff's allegations are insufficient to open the door to discovery. For the reasons set forth below, we agree with Provident Life, and therefore deny plaintiff's motion for leave to conduct discovery.

I.

The Seventh Circuit has explained that "[a]lthough discovery is normally disfavored in the ERISA context, at times additional discovery is appropriate to insure that Plan administrators have not acted arbitrarily and that conflicts of interest have not contributed to any unjustifiable denial of benefits." *Semien*, 436 F.3d at 814-15. In *Semien*, the Court held that "[a] claimant must demonstrate two factors before limited discovery becomes appropriate. First, a claimant must identify a specific conflict of interest or instance of misconduct. Second, a claimant must make a *prima facie* showing that there is a good cause to believe limited discovery will reveal a procedural defect in the Plan administrator's determination." *Semien*, 436 F.3d at 815. The *Semien* court commented that "[w]hile this standard essentially precludes discovery without an affidavit or factual allegation, we believe that this approach is the only reasonable interpretation of ERISA." *Id.* at 815.

We analyze below the two allegations that plaintiff makes in an effort to satisfy the *Semien* test. We conclude that neither of the allegations warrants the discovery under *Semien*.

A.

Prior to the decision to discontinue LTD benefits, Provident Life sent plaintiff to Dr. Marshall Matz for an independent medical examination ("IME"). As a result of that IME, Dr. Matz wrote a seven-page letter analyzing plaintiff's condition and concluding that, "[f]rom a neurosurgical perspective, I find no restrictions or limitations with regard to [plaintiff] returning to work in her prior capacity" (Def.'s Resp., Ex. D, at 7). Plaintiff alleges that Dr. Matz's opinion was the only report that Provident Life cited for the decision to discontinue LTD benefits (Compl. ¶ 29).

3

Plaintiff further alleges that Dr. Matz is regularly retained by insurers, disability plans or other institutional defendants "to provide medical opinions and testimony in support of the position that a particular individual is not disabled;" that, as a result of that work, Dr. Matz "has a bias for insurers/defendants in disability matters and against plaintiffs seeking to prove that they are disabled;" and that Provident Life was aware that Dr. Matz "was not truly an independent and unbiased medical examiner at the time that they selected him to review Plaintiff's claim" (Compl., ¶¶ 30-31). These allegations of bias by Dr. Matz are insufficient to trigger discovery under *Semien*.

*First*, these allegations are conclusory, and are not supported by affidavit or factual allegations (*i.e.*, evidence) as required by *Semien*. The fact that a doctor is regularly consulted by an insurance company (or defense interests more generally) does not, *ipso facto*, render the doctor biased. Were that the case, any time an insurer used in-house doctors in deciding eligibility for benefits, a plaintiff challenging a denial of benefits could claim bias and open the door to discovery. Such a result would make discovery in those cases the rule and not the exception, which plainly is not the law. *Davis v. Unum Life Ins. Co. of America*, 444 F.3d 569, 575 (7th Cir.), *cert. denied*, 127 S.Ct. 234 (2006) (rejecting a claim that an administrator's use of in-house doctors creates a conflict of interest).

*Second*, plaintiff's reference to a letter she wrote complaining about Dr. Matz's conduct during the IME (Pl.'s Mem. at 6-7) fails to provide *prima facie* evidence of bias or misconduct. We understand that a claimant, who was denied LTD benefits, such as plaintiff here, naturally would be dissatisfied with the doctor who opined that she was not disabled. Indeed, we think it would be a rare plaintiff who would not be unhappy with a doctor under those circumstances. That reality underscores why a plaintiff's criticism of a doctor as "biased" is not sufficient to satisfy the *Semien*

standard for opening the door to discovery; again, were it otherwise, discovery plainly would be the norm and not the exception. Moreover, in this case, there is an additional reason to find that the plaintiff's criticisms of Dr. Matz are insufficient to meet the *Semien* standard. She did not raise any of the criticisms she now levels against Dr. Matz, including the criticisms of his conduct toward plaintiff during the IME, until after Dr. Matz had issued his opinion.

*Third*, plaintiff fails to address the evidence offered by Provident Life that Dr. Matz's opinion did not stand alone. Dr. Thomas reviewed Dr. Matz's IME and found it to be "credible": he stated that the conclusions reached by Dr. Matz "appear to be based upon reasonable review of the information and are consistent with the evaluation" (Def.'s Resp., Ex. E). In addition, after Dr. Matz's review, Dr. Sternbergh found that "medical evidence, to a reasonable degree of medical certainty, would support the claimant's ability to do sedentary work, with accommodation to prevent repetitive flexions/extensions of the cervical spine, as well as repetitive reaching or overhead work with the left upper extremity" (*Id.*, Ex. F, at 4). Plaintiff does not suggest that either Dr. Thomas or Dr. Sternbergh were biased, and their views either agreed with that of Dr. Matz (in the case of Dr. Thomas) or, despite some differences, nonetheless would support denial of LTD benefits (in the case of Dr. Sternbergh). This evidence – offered in defendant's response and ignored in plaintiff's reply – further undermines plaintiff's ability to make a *prima facie* showing that the discovery sought as to Dr. Matz would reveal "a procedural defect in the Plan administrator's determination." *Semien*, 436 F.3d at 815.

## B.

In support of her request for discovery, plaintiff also alleges that a governmental investigation, which resulted in a "regulatory settlement agreement," "raises significant concerns relating to systematic unfair claims adjudication practices by UnumProvident and its subsidiaries identical to the ones presented in this matter and during the same time period" (Compl., ¶ 33). This reference to the regulatory settlement agreement, even when coupled with the conclusory assertion that it raises "significant concerns relating to systemic unfair claims adjudication practices," does not satisfy plaintiff's obligation under *Semien* to offer a *prima facie* showing of misconduct. A settlement agreement is not an adjudication (or even evidence of) misconduct. Indeed, the regulatory settlement agreement upon which plaintiff relies specifically makes this point: it states that the settlement is without any admission of fault or liability, and that the settlement may not be offered as evidence of any admission of liability or wrongdoing (Pl.'s Mem., Ex. 1, ¶¶ 11-12). Moreover, the settlement agreement specifically provides that it may not be interpreted to create any rights of participants in ERISA-covered plans, "including any appeal or review rights under the Plan" (*Id.* ¶ 13).

To the extent that plaintiff uses the regulatory settlement agreement to establish misconduct by Provident Life, that effort flies in the face of these provisions making clear that the settlement did not include an admission of liability (as might be the case in a consent decree or judgment). In addition, plaintiff's attempted use of the regulatory settlement agreement is at odds with at least the spirit of Federal Rule of Evidence 408, which provides that evidence of a settlement agreement cannot be used to prove liability. Allowing plaintiff to use the settlement agreement in this fashion

would run contrary to the intent of the parties to the agreement, and could create disincentives toward entering into settlement agreements.

Finally, the sense of plaintiff's argument is that the settlement agreement shows that Provident Life routinely deprives claimants of fair consideration of their benefits requests. Thus, were we to accept plaintiff's effort to obtain discovery based on this settlement agreement, that would open the door to allowing discovery in every case challenging a Provident Life decision denying benefits. A voluntary settlement agreement that contains no findings or admissions of misconduct cannot bear this weight that plaintiff seeks to place upon it.[2] For all of these reasons, we conclude that plaintiff's allegation concerning the regulatory settlement agreement does not entitle her to discovery under the standards set forth in *Semien*.[3]

## CONCLUSION

For the foregoing reasons, plaintiff's motion for leave to conduct discovery (doc. # 30) is denied. The matter is set for a status conference on June 21, 2007, at 9:00 a.m.

ENTER:

SIDNEY I. SCHENKIER
United States Magistrate Judge

**Dated: June 8, 2007**

---

[2] In a further effort to establish that Provident Life routinely deprives claimants of fair consideration, plaintiff cites a number of cases in which conduct by Unum or Provident Life has been criticized (Pl.'s Mem. at 9-10). Defendant responds by citing cases finding that Unum and Provident Life and related subsidiaries provided "full and fair" review in the exercise of discretionary authority (Def.'s Resp. at 10). We agree that the cases cited by plaintiff do not satisfy their burden under *Semien* of making a *prima facie* showing of a conflict of interest or instance of misconduct with respect to the LTD benefit denial at issue here.

[3] Plaintiff cites to a number of decisions outside this circuit which have allowed discovery to proceed (see, *e.g.*, Pl.'s Mem. at 8). We conclude that those cases reflect an approach to discovery in ERISA cases different than that set forth in *Semien*, which is controlling Seventh Circuit authority that we are bound to follow.